B.

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT**
**IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

STATE OF FLORIDA )
) SS **UNDER SEAL**
COUNTY OF MIAMI-DADE)

**AFFIDAVIT FOR SEARCH WARRANT**

Before me, Yvonne Colodny, a Judge of the Circuit Court of the Eleventh Judicial Circuit of Florida, personally appeared Detective David Mata, Badge #10-0650 of the Homestead Police Department, Robbery Bureau, who being by me first duly sworn deposes and says that she has probable cause to believe and does believe that evidence of a felony crime is located at the below described premises, which is located in the City of Homestead, Miami-Dade County, Florida, and hereinafter referred to as "The Premises."

**DESCRIPTION OF PREMISES TO BE SEARCHED**

The following items were impounded under Homestead police case number 131011-0036 after execution of a search warrant on October 14, 2013 and are currently stored at the Homestead Police Department, 4 South Krome Ave. Homestead, Florida 33035:

1. Cellular telephone- Red Samsung Cell Phone, Model # SCH-R350, SR# A000001E75A5F3, Metro PCS.

2. Cellular telephone- Black Samsung Cell Phone, Model # SCH-R350, SR# A000001DCAD0A3, Metro PCS.

**STATUTE(S) BEING VIOLATED**

F.S.S. § 812.13(2)(A) Robbery with a Firearm

**PROPERTY SOUGHT**

Your Affiant seeks to seize the below-described evidence and to conduct a forensic search and preserve as evidence any of the listed items that may be in electronic or digital format:

1. Cellular telephone- Black Samsung Cell Phone, Model # SCH-R350, SR# A000001DCAD0A3, Metro PCS, impounded under Homestead police case number 131011-0036.

2. Cellular telephone- Black Samsung Cell Phone, Model # SCH-R350, SR# A000001DCAD0A3, Metro PCS impounded under Homestead police case number 131011-0036.

3. Telephone number assigned to the above referenced telephone.

4. Any and all telephone numbers of outgoing telephone calls or incoming telephone calls including but not limited to October 14, 2013, the date of the execution of the search warrant, in order to identify other the owner of the Premises.

5. Any and all electronic address books, contact lists, telephone number lists, buddy lists, or any other software program used for the electronic compilation of contact information, so that a comparison can be made with any telephone numbers found pursuant to paragraph four above, with numbers already stored in the user's contact list in an effort to identify the owner of the Premises.

6. Any and all data, metadata, records, documents, digital photographs, electronic communications, and registry files tending to show ownership and/or dominion and/or control over the above referenced telephone.

The items detailed in the paragraphs one (1) through six (6) are hereinafter referred to as "The Property."

**GROUNDS FOR ISSUANCE**

"The Premises" to be searched is something other than a "Private dwelling" AND evidence relevant to proving a felony has been committed is contained therein. The facts establishing the grounds for this affidavit and the probable cause for believing that such facts exist are detailed below. Because this affidavit is being submitted for a limited purpose of establishing probable cause, your Affiant has not included every aspect, fact, or detail of this investigation.

**PROBABLE CAUSE AND THE SPECIFIC FACTS OF THIS INVESTIGATION**

On September 18, 2013, your Affiant was assigned as lead investigator for H.P.D. Case No.: 130913-0035

On September 13th, 2013, the victim H. Perez reported a robbery under HPD Case# 130913-0035. The victim stated he was traveling north on NW 2nd Ave when a gray Ford Taurus drove up behind him and activated a red and blue light on the wind shield. The victim said he pulled over and observed the police officer (hereinafter referred to as "the subject") exit the vehicle with a badge around his neck and a hand held radio.

The Subject asked Victim H. Perez for his driver's license and insurance. When Victim H. Perez advised the Subject that he did not have a driver's license, the Subject asked Victim H. Perez for an ID. When Victim H. Perez advised the Subject that he had an ID in his wallet, the Subject ordered Victim H. Perez to exit the vehicle and place his hands on his car. Victim H. Perez stated that the subject patted down the victim and removed the victim's wallet from the left front pocket of victim H. Perez and ordered the victim to wait. The subject then returned to his vehicle and after a few minutes returned the wallet and ordered victim H. Perez to go home. Victim H. Perez advised he was in fear of the subject because he was not sure if the subject was a real police officer and he believed the subject had a firearm. Victim H. Perez entered his vehicle and departed the area, upon arrival at the victim's home. Victim H. Perez checked his wallet and realized he was missing $130.00 in US currency.

Victim H. Perez described the subject as a white male between the ages of 35 to 40. Victim H. Perez further stated that the subject was approximately 5'10 in height, weighed between 190 to 220 pounds, medium build, brown eyes, black hair, and a mustache. Victim H. Perez also stated that the subject had a hand held radio and a police badge hung around his (the subject) neck.

On October 11th, 2013, at 2031, officers were dispatched to 409 NW 4th Ave in reference to a caller (later identified as H. Perez) advising he had information in reference to a robbery that occurred approximately one month prior (HPD Case# 1309130035). Victim H. Perez told the responding officers that the subject had attempted to stop the victim H. Perez again on that date. Victim H. Perez stated that it was the same subject and vehicle that had stopped victim H. Perez on September 13, 2013.

While interviewing victim H. Perez, victim Dominguez approached the officers and reported that he was just robbed.(HPD Case# 1310110036.) Victim Dominguez stated he was traveling west bound on W. Mowry Dr. when he (victim) was stopped by an unmarked police vehicle. The victim described the vehicle as having blue lights on the bottom and top part of the front windshield. Victim Dominguez exited the vehicle and made contact with the subject outside the victim's vehicle. Victim Dominguez stated he assumed the subject was a police officer and described seeing a gun tucked inside the front waistband of the subject. The subject then asked Victim Dominguez for his driver's

license, registration, and proof of insurance. The victim then removed his wallet from his pocket and began fumbling through the wallet looking for his identification.

According to the victim, the suspect removed the victim's wallet from the victims hand and advised the victim to contact somebody to release the vehicle because he (the victim) was going to jail. The victim called a friend (employer) and responded to the front passenger side of his vehicle to retrieve the registration. Victim Dominguez stated several seconds later, he heard a female yelling "he is not a cop, he is a thief" in Spanish. Victim Dominguez then looked up and noticed the subject was no longer on scene and driving northbound on the avenue.

Victim Dominguez then ran around his vehicle to look for his wallet. Victim Dominguez was able to locate his wallet on the driver seat along with documents that were in the wallet scattered throughout the seat as if the property was thrown there. Victim Dominguez advised that he then noticed that $300.00 was missing from the wallet.

Victim Dominguez described the subject as a white male, 5'8 to 5'11 in height, spoke English, black hair, and a black firearm in his waistband. Victim Dominguez further stated that the subject was driving a silver four door Ford Taurus.

Witness L. Perez, who was the female that assisted victim Dominguez, approached officers and advised the first three numbers of the tag on the subject's vehicle was "117". A B.O.L.O. with the information provided by the witness L. Perez and Victim Dominguez was issued via the police radio.

Witness L. Perez stated she observed the traffic stop at which time she approached the scene. The witness was trying to take video of the subject and the vehicle with her phone at which time the subject observed witness L. Perez attempting to take the video and quickly entered his four door silver Ford Taurus (unmarked police vehicle) and fled.

While on patrol, Officer J. Stephenson of the Homestead Police Department (CID # 10-0741) observed a vehicle matching the description of the B.O.L.O. southbound on N. Krome Ave. The vehicle was silver Ford Taurus with the first three letters of the tag as "117" consistent with the description provided by witness L. Perez. A traffic stop was conducted at which time the driver exited his vehicle and identified himself as a Miami Dade Police Officer.

Due to the similarities of the vehicle, tag and the description provided by the victim and witnesses, a show up was conducted.

Victim H. Perez was transported to the scene reference a show-up. Upon arrival at the scene, the victim stated the vehicle at the stop was being driven by the suspect who robbed him approximately a month ago. The victim saw the driver of the vehicle on scene and also identified the subject as the same person that robbed him a month ago.

Witness L. Perez was transported to the scene reference a show-up. Upon arrival at the scene, L. Perez positively identified the vehicle as the same vehicle that pulled over the SUV that same night.

Victim Dominguez was transported to the stop location reference a show-up. The victim positively identified the occupant of the vehicle and the vehicle as the same person that conducted a traffic stop.

At 2153 hrs your affiant and Det. F. Morales interviewed witness L. Perez who stated her husband H. Perez had an acquaintance call her and advised the same person that robbed her husband (H. Perez) was following her husband again. According to L. Perez, she then exited the convenience store located at 291 W. Mowry Dr. and observed the same vehicle that robbed her husband had conducted a traffic stop on the west side of the convenience store on NW 3rd Ave.. L. Perez stated she then began running towards the traffic stop screaming and alerting victim Dominguez that the person that victim Dominguez believed was a police officer was not an officer but a "Robber". L. Perez stated she then attempted to take a video of the subject and the vehicle but the subject quickly entered his vehicle and fled north on 3rd Ave. L. Perez stated she was able to memorize a partial tag consisting of the first three digits of "117".

At 0413hrs, your affiant and Det. Morales interviewed the subject. The subject was offered the opportunity to contact his union representative to which he declined. Det. Morales read the subject his Miranda rights per form. The subject read the form and waived his rights. The subject stated on 10/11/13 he was working afternoon shift 1600-2400hrs. The subject stated he arrived at Miami Dade P.D. station 4 at approximately 1630hrs. The subject initially stated he parked at station 4 and entered the building and used the elevator to the second floor but then advised he used the rear stairwell. The subject stated he then left the station and patrolled several areas throughout the south district. The subject stated he traveled to the City of Homestead reference patrolling the junk yards on W. Mowry Dr.

The subject stated he attempted to conduct a traffic stop on a vehicle but he was unable to catch up to the vehicle. The subject stated he then conducted a traffic stop at approximately the 100 BLK of NW 5th Ave. The subject stated he approached the driver and asked him to step out of his vehicle. The subject asked the driver for his driver's license registration and proof of insurance. Once the driver told the subject he did not have a drivers license, the subject took the drivers wallet and checked it for any type of identification. The subject gave the wallet back to the driver and continued his duties as a police officer. The subject stated he then responded to Leisure City and then responded back to the City of Homestead where he was stopped by police. The subject denied taking money from the victim. The subject was also questioned about the robbery which occurred approximately a month ago and denied any involvement in the robbery. The subject stated he did not remember if he pulled the victim over in that case. The subject was asked if he would provide a sample of DNA and he stated "yes". I provided the consent to provide DNA form to the suspect and he refused to provide his DNA. The interview was recorded and it was downloaded to a CD.

MDPD Sgt. Jackson and Sgt. Saunders from the Miami Dade the Professional Compliance Bureau responded to H.P.D and met with your affiant and Det. Morales. Your affiant was then advised H.P.D will handle the criminal case and PCB will handle MDPD internal investigation.

At this time the unmarked police vehicle (four door Silver Ford Taurus, Fl. Tag of 117-ICB and a VIN # 1FAHP53U57A138931) was towed to Economy Towing located at 111 SW 2st. In Homestead, Florida and placed in secure storage.

Det. Aquino, Sgt. Jackson, Sgt. Saunders, Det. Morales and I met with the victims and witnesses at H.P.D. The victim's and witness were interviewed. The interview was recorded and it was downloaded to a CD.

On October 14, 2013, a Search Warrant for the above vehicle was signed by Judge Luck and executed the same day. During the search of the vehicle, several ID's, Documents, Laptop Computer, miscellaneous paperwork, several current Florida license plates, and several identification cards not belonging to the subject. The Premises was found among this property and was impounded and Homestead Police department.

Your affiant believes that the Premises is stolen property. While impounding the the Premises, Det. F. Morales observed one of the cellular phones ringing. While the cellphone was ringing, it displayed a photograph a Hispanic male who was not the subject. In addition, when the Subject was allowed to retrieve his personal belonging from the vehicle he took a cellular phone and other property and left the Premises behind.

From your affiant's training and experience, your affiant knows that it is possible to obtain information from cellular telephones, including stored phone numbers, phone books, address books, schedules or calendars, logs of incoming calls and outgoing calls, missed calls, and electronic communications and alphanumeric messages. This information may be relevant in the pending robbery investigation in that it will assist in identifying other victims of theft and/or robbery. Therefore, your affiant seeks to search the Premises for evidence relating to the identity of the owner of the Premises. Thus, there is probable cause to believe that the above referenced telephones contain evidence relevant to felony crimes, your Affiant seeks permission of the Court for a forensic examination on the above referenced telephones to search for the specific evidence delineated above.

WHEREFORE, your Affiant prays that a Search Warrant be issued commanding the Director of the Miami Dade Police Department, who is also known as the Sheriff of Metropolitan Miami-Dade County, Florida, or his Deputies, and the Commissioner of the Florida Department of Law Enforcement, or any of his duly constituted agents, and the Chief of Police for the City of Homestead Police Department, or any of his duly qualified officers, and all Investigators of the State Attorney of the Eleventh Judicial Circuit of Florida, Miami-Dade County, Florida, and all members of the Miami Electronic Crimes Task Force including the United States Secret Service, and the Federal Bureau of Investigation, all with the proper and necessary assistance, to search "The Premises" above-described, for "The Property" above-described, making the search in the Daytime or the Nighttime, as the exigencies may demand or require, or on Sunday, and if the same be found at "The Premises," to seize the same as evidence.

D Mata

AFFIANT
Detective David Mata, ID 10-0650
Miami Dade Police Department

SWORN TO AND SUBSCRIBED BEFORE ME THIS THE 30 DAY OF Oct., 2013.

JUDGE OF THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT OF FLORIDA