**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 15-20459-CR-COOKE/TORRES**

**UNITED STATES OF AMERICA** |

**v.** |

**WILLIAM KOSTOPOULOS** |

**Defendant.** |

**UNITED STATES' RESPONSE IN COMPLIANCE WITH THE COURT'S ORDER REGARDING THE DEFENDANT'S MOTION TO COMPEL PRODUCTION OF EVIDENCE RELATING TO THE FBI PHOTO ARRAY**

The United States, by and through its undersigned attorneys, hereby files this response in compliance with the Court's Order regarding defendant William Kostopoulos's Motion To Compel Production of Evidence relating to the man pictured in position one during the FBI photo array procedure, ECF Nos. 112 & 113. Following the defendant's request, the United States sought to determine the identity of this man. The United States has now provided the defendant with 61 pages of information responsive to his request about the man, Mr. Andres Pena, including his date of birth, last known address, vehicle registration history, his criminal history, and the source of and modifications to the photograph of Mr. Pena used in the photo array. Due to privacy concerns, the United States has provided this information to defendant's counsel directly, rather than as an attachment to this filing. The United States will provide a copy to chambers if the Court so requests.

The United States does not, however, have any information about Mr. Pena's whereabouts on September 13, 2013, and he has not been questioned by the United States or the Homestead Police Department in connection with the crimes charged in the Indictment.

## I. RELEVANT BACKGROUND

The defendant is charged with three counts of deprivation of rights under color of law, in violation of 18 U.S.C. § 242, for each of three thefts involving victims Narciso Carrillo, Hugo Gomez, and Santiago Garcia. The defendant is also charged with one count of violating 18 U.S.C. § 1512(b)(3) for making false statements to the Homestead police detectives during his interview.

The defendant worked as a detective in Miami Dade Police Department's (MDPD) auto theft unit covering the southern portion of Miami Dade County from January 2003 to July 2015. Counts One through Three arise from traffic stops the defendant made of the three victims on three separate dates, between March 15, 2011, and October 11, 2013, the evening the Homestead Police Department (HPD) stopped the defendant.

Later that evening, aided by the descriptions provided by the victims and witnesses of both the man who had robbed them and the gray Ford Taurus he was driving, Homestead police officers stopped the defendant. They conducted a show-up identification at the scene of his stop, and victim Hugo Gomez and witness Luisa Bravo both separately positively identified the defendant as the perpetrator.

In December 2013, HPD turned its investigation over to the FBI, which initiated its own criminal investigation. As part of that investigation, the FBI interviewed Hugo Gomez and conducted a photographic line-up identification procedure on December 24, 2013. Although the FBI conducted the photo array, the FBI used a photo array previously created by HPD in October 2013. *See* Exhibit A (copy of the Dec. 24, 2013, photo array). HPD created that array by taking

the Department of Motor Vehicle photograph of the defendant, in which he was wearing glasses and which had a blue background, and searching a Miami-Dade database of mugshots to find men who appeared physically similar to the defendant. HPD did this by searching the database for men of a similar race, weight, and age, and then manually screening the resulting photographs for five photographs that closely resembled the defendant. So the defendant did not stand out from the others in any way, HPD then made two modifications to each of the photographs of the five men who resembled the defendant. First, because the defendant was pictured wearing eye glasses, HPD made a copy of the defendant's actual eye glasses, and digitally applied those eye glasses to the photographs of the five men. HPD then changed the background color of the photographs to make it as close as possible to the blue background in the defendant's photo.

The FBI then conducted a photo identification procedure with Mr. Gomez. As part of that procedure, the FBI provided its standard admonishments to Mr. Gomez in Spanish, instructing him that the photo array Mr. Gomez was about to see "may or may not contain a picture of the person who committed the crime now being investigated;" warning him that "hair styles, beards, and mustaches may be easily changed" and that "photographs may not always depict the true complexion of a person which may be lighter or darker than shown in the photo." The FBI also cautioned Mr. Gomez that he should only make an identification if he was able to do so.

Mr. Gomez viewed the line-up and initially stated that he was unable to identify the person who robbed him with certainty. He then stated that the person shown in the first photo resembled the person who robbed him. Mr. Gomez said that the complexion of the person shown in photo number one more closely resembled the complexion of the person who robbed him. The FBI instructed Mr. Gomez to initial the top of photo number one, which pictured Mr. Pena's modified photograph from the Miami-Dade database, not the defendant. Unlike the practice at HPD, it is the

practice of the FBI to memorialize any statement of identification that a witness makes during a photo identification procedure, even if, as occurred here, the witness indicates he or she is not able to make a definite identification.

The FBI did not at the time that the photo array was conducted have any knowledge about the identities of any of the men pictured in the photo array other than the defendant. In response the instant request of the defendant, the government has now obtained the identity of the man pictured in photo one. The United States has not, however, ever interviewed that man in connection with this investigation and has no evidence in its possession (other than Mr. Gomez's statement of December 24, 2013, that the man in photo one resembled the man who robbed him) that indicates that he, rather than the defendant, committed the crimes charged in the Indictment, or that he has any knowledge of the crimes charged in the Indictment.

In an effort to provide the defendant with the information that he is requesting, the FBI has searched Mr. Pena's driver and vehicle information database (DAVID) and criminal history records. They indicate that in September 2013, Mr. Pena was living in Pembroke Pines, FL, that he did not have a driver's license requiring him to wear corrective eyewear while driving, and that on September 13, 2013, the date of the theft charged in Count II, a red two-door Acura and red Kia van were registered to Mr. Pena. Mr. Pena has never been arrested or charged with a theft-related crime. His only conviction, which occurred twelve years ago next month, is for the possession of cocaine. In that case, he plead guilty but the adjudication was withheld.

On December 7, 2016, the defendant moved to compel the United States to produce identifying information about the man shown in photograph one, including his name, date of birth, his last known address, his criminal history, the makes and models of vehicles linked to him, information about his whereabouts on September 13, 2013, the source of his photo used in the line-

up, and any evidence that would connect him to Count II. The United States has now provided the information it has obtained about Mr. Pena to the defendant. Specifically, the United States has provided the results of its DAVID and criminal history searches of Mr. Pena, which contain information about his address, date of birth, vehicle registration history and criminal history.

## II. CONCLUSION

The United States respectfully files this notice to inform the Court that it has complied with the Court's order, ECF No. 113; to provide additional information to the Court about Mr. Gomez's statements during the photo array procedure; and to inform the defendant and the Court about the manner in which Mr. Pena's photograph was modified prior to being placed in the photo array.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: *s/ Edward N. Stamm*________________
Edward N. Stamm (Fl. Bar No. 373826)
Assistant United States Attorney
United States Attorney's Office
Southern District of Florida
99 NE 4th Street
Miami, FL 33132
Tel: (305) 961-9164
edward.stamm@usdoj.gov

*s/ Tonya R. Long*________________
TONYA R. LONG
Court ID No. A5501902
Assistant United States Attorney
United States Attorney's Office
Southern District of Florida
99 NE 4th Street
Miami, FL 33132
Tel: (305) 961-9112
Fax: (305) 530-7976
tonya.long@usdoj.gov

*s/ Samantha Trepel*___________
SAMANTHA TREPEL
Court ID No. A5501689
Trial Attorney, Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue NW, PHB
Washington, DC 20530
Tel: (202) 305-3204
Fax: (202) 514-8336
samantha.trepel@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 20, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

*s/ Samantha Trepel*______________
SAMANTHA TREPEL
Trial Attorney
U.S. Department of Justice